E. CARMEN RAMIREZ (D.C. Bar #975331)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-616-2885 (Ramirez)
Facsimile: 202-307-0054 (f)
Email: E.Carmen.Ramirez@usdoj.gov
western.taxcivil@usdoj.gov

*Counsel for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WCEC ADMINISTRATION, ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br><br>Defendant. | **UNITED STATES' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00591-HCN-CMR<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Cecilia B. Romero<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I. Introduction ........ 1

II. Background ........ 3

A. Statutory scheme ........ 3

B. Plaintiffs' allegations ........ 3

C. Counts alleged and relief requested ........ 7

III. Argument ........ 8

A. Standard for review ........ 8

B. Plaintiffs have not shown they have standing under either Article III or the APA. ........ 9

1. Plaintiffs have not properly alleged Article III standing. ........ 9

2. Plaintiffs have not shown they have standing under the APA. ........ 12

C. This Court has no jurisdiction for Plaintiffs' APA suit, because Congress has provided a specific mechanism for relief elsewhere. ........ 17

D. Even if Plaintiffs could bring suit under the APA, the putative rule here is not subject to notice and comment procedures. ........ 19

E. Plaintiffs have not shown a private right of action under the Congressional Review Act. ........ 20

F. The Anti-Injunction Act and the Declaratory Judgment Act expressly prohibit this action. ........ 21

IV. Conclusion ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Alpine Sec. Corp. v. SEC*, 2024 U.S. Dist. LEXIS 201636 (D. Utah Nov. 5, 2024) .................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 8

*Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974) ...................................................................... 21

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ......................................................................... 17

*Ctr. for Auto Safety v. Natl. Hwy. Traffic Safety Admin.*, 452 F.3d 798 (D.C. Cir. 2006) ............ 19

*CIC Servs., LLC v. IRS*, 593 U.S. 209 (2021) ..................................................................... 22, 23

*Colo. Farm Bureau Fed'n v. United States Forest Serv.*, 220 F.3d 1171 (10th Cir. 2000) .......... 13

*Colt v. United States DOL*, 2025 U.S. Dist. LEXIS 4657 (D.N.M. Jan. 9, 2025) .......................... 9

*Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445 (10th Cir. 1996) ................................... 10

*DNA Pro Ventures, Inc. v. Comm'r*, 856 F.3d 557 (8th Cir. 2017) ............................................ 18

*Eames v. United States*, 2014 U.S. Dist. LEXIS 136632 (D. Utah Sep. 26, 2014) ...................... 17

*Ed Thielking, Inc. v. Comm'r*, 2020 Tax Ct. Memo LEXIS 5 (T.C. Jan. 9, 2020) ....................... 17

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962) ............................................ 24

*Fayeghi v. Comm'r*, 211 F.3d 504 (9th Cir. 2000) ...................................................................... 7

*Hallmark Rsch. Collective v. Comm'r*, 159 T.C. 126 (2022) ...................................................... 7

*Kansas Nat. Resource Coalition v. U.S. Dept. of the Int.*, 382 F. Supp. 3d 1179 (D. Kan. 2019), *aff'd*, 971 F.3d 1222 (10th Cir. 2020) ................................................................................... 21

*Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001) ......................................................... 13

*Lee v. McCardle (In re Peeples)*, 880 F.3d 1207 (10th Cir. 2018) ................................................ 9

*Martineau v. Currutt*, 2022 U.S. Dist. LEXIS 11357 (D. Utah Jan. 19, 2022) ........................ 8, 11

*Miller v. United States Dep't of Agric.*, 2024 U.S. Dist. LEXIS 211993 (W.D. Okla. Nov. 21, 2024) ..................................................................................................................................... 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .......... 21

*Neustar, Inc. v. FCC*, 857 F.3d 886 (D.C. Cir. 2017) .......... 14

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) .......... 19

*Rost v. United States*, 44 F.4th 294 (5th Cir. 2022) .......... 14

*S. Utah Wilderness All. v. United States DOI*, 2025 U.S. Dist. LEXIS 20644 (D. Utah Feb. 4, 2025) .......... 10

*Sinclair Wyoming Ref. Co., LLC v. United States Env't Prot. Agency*, 72 F.4th 1137 (10th Cir. 2023) .......... 12, 13

*South Carolina v. Regan*, 465 U.S. 367 (1984) .......... 24

*Tamko Asphalt Prods. v. Comm'r*, 658 F.2d 735 (10th Cir. 1981) .......... 18

*United States v. Magnesium Corp. of Am.*, 616 F.3d 1129 (10th Cir. 2010) .......... 19

*Wyo. ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) .......... 9

**Statutes**

5 U.S.C. § 551 .......... 14

5 U.S.C. § 553 .......... 19

5 U.S.C. § 704 .......... 13

5 U.S.C. § 805 .......... 20

26 U.S.C. § 401 .......... 3, 12, 17

26 U.S.C. § 501 .......... 12

26 U.S.C. § 4975 .......... 3, 12

26 U.S.C. § 6211 .......... 7

26 U.S.C. § 6707A .......... 4

26 U.S.C. § 7421 .......... 21

26 U.S.C. § 7422 .......... 19, 22, 24

26 U.S.C. § 7476 .......... 17, 18

28 U.S.C. § 2201 .................................................................................................... 21

**Rules**

Fed. R. Civ. P. 12 .................................................................................................... 1, 8, 21

**Regulations**

26 C.F.R. § 1.170A-17 .................................................................................................... 3

26 C.F.R. § 1.401-1 .................................................................................................... 3

26 C.F.R. § 1.6011-4 .................................................................................................... 4

The United States of America, on behalf of named defendant the Commissioner of Internal Revenue, hereby moves to dismiss Plaintiffs' suit pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiffs challenge a putative administrative rule under the Administrative Procedure Act. However, their complaint does not plausibly allege that the rule even exists, let alone that Plaintiffs have been injured by it, that the injury is fairly traceable to the challenged conduct, or that the relief sought could remedy their injury. As a result, Plaintiffs have not shown that they have standing to bring their suit. And even if a plaintiff could challenge a conjectural rule under the APA and Plaintiffs here had standing to do so here, Plaintiffs' claims would still fail. The APA does not apply where, as here, Congress has provided other mechanisms for relief. Furthermore, the conjectural rule alleged by Plaintiffs would be, at most, interpretive, and thus not subject to the procedural requirements Plaintiffs say the IRS failed to meet. Finally, to the extent the suit would restrain the assessment or collection of tax obligations, it is barred by both the Anti-Injunction Act and the Declaratory Judgment Act.

## I. INTRODUCTION

This is one of at least four proceedings concerning employee stock ownership plans, known as ESOPS, associated with a consultant named Lex Byers. An ESOP is an employee benefit plan that provides its participants tax-advantaged investment opportunities, assuming the plan meets the qualification standards set forth in the Internal Revenue Code and adheres to specific requirements prescribed in Treasury regulations.

Plaintiffs here are a corporation, WCEC Administration, Inc. (WCEC), and its now defunct ESOP. They claim (to the extent a defunct plan can claim anything as a plaintiff in federal court) that the IRS violated the APA by promulgating a "secret" administrative "rule"

under which various ESOPs were or may be disqualified. The complaint alleges that a similar ESOP, sponsored by Adminicor Services, Inc., is already the subject of a group of cases pending in the United States Tax Court. Moreover, one of Plaintiffs' attorneys here has filed a similar suit, raising the same causes of action and seeking almost identical relief, in the Eastern District of Wisconsin on behalf of yet another corporation, that corporation's ESOP (also defunct), and four individuals connected to the ESOP. (*See Jeffrey L. & Elisha A Daines et al. v. Internal Revenue Service*, Case No. 1:24-cv-01057 (E.D. Wis.) (Dkt. 1).) That complaint alleges that at least two of the individuals and the corporation also have pending Tax Court cases concerning the IRS's treatment of that plan. (*Id.* ¶¶ 57-58.)

Whether the WCEC ESOP itself has been disqualified under the putative rule is unclear from the complaint. The contours of the rule are also unclear from the complaint: Plaintiffs do not point to any statement, publication, or written policy that sets forth the terms of the rule or otherwise memorializes it. But according to Plaintiffs, the supposed rule targets ESOPs associated with Byers. They contend that the so-called "Byers Rule" imposes significant qualification requirements beyond what the relevant statute and regulations impose. They seek a declaratory judgment that the putative rule is unlawful because it failed to go through notice and comment procedures and otherwise violated the APA, and they ask for "vacatur" of the rule for all "similarly situated" taxpayers. For the reasons listed above and discussed in more detail below, the complaint should be dismissed in its entirety.

## II. BACKGROUND

### A. Statutory scheme

An ESOP is a type of defined contribution employee benefit plan, designed to invest in employer securities. *See* 26 U.S.C. § 4975(e)(7). To receive tax benefits, ESOPs must meet the qualification standards set forth in 26 U.S.C. § 401 and follow the specific requirements prescribed in the applicable Treasury Regulations. For example, under 26 C.F.R. § 1.401-1(a)(2), a qualified plan must be a defined, written program that is clearly communicated to employees and maintained by the employer. Additionally, 26 U.S.C. § 401(a)(28)(C) mandates that if the employer's securities are not publicly traded (as would usually be true for an S corporation like WCEC), the plan must obtain a valuation from an independent appraiser, while various regulations set requirements for the appraisal process and determine who may be qualified to perform the appraisal. *See* 26 C.F.R. § 1.170A-17.

### B. Plaintiffs' allegations

Plaintiffs allege that WCEC has been a valid S corporation since 2012. (Compl. ¶¶ 1, 20-21). ("S" status offers certain tax advantages to small or closely held businesses.) They allege that after WCEC elected S status, it adopted an ESOP to offer retirement benefits to employees. (*Id*. ¶¶19-22). Plaintiffs allege that Byers and his business, IFL Capital Group, had marketed ESOP services to numerous clients, and that Plaintiffs used the "Byers Proprietary ESOP System" to implement the WCEC ESOP. (*See id*. ¶¶ 15, 23.) Plaintiffs allege that they "amended and restated" the WCEC ESOP on January 1, 2015, but do not describe the changes or say whether Byers recommended or was involved in the restatement. (*Id*. ¶ 28.)

According to Plaintiffs, the IRS approved plans associated with Byers for many years. (*Id.* ¶¶ 17-18, 30.)[1] However, they allege that in 2016, a "disgruntled former client" provided "falsified" information about Byers to the IRS, which prompted the IRS to begin investigating Byers. (*Id.* ¶¶ 35-36.)[2] Plaintiffs do not allege much about what the IRS was investigating or what it may have uncovered. However, plaintiffs suggest that the IRS believed that Byers's clients may have engaged in what are known as "listed" or "reportable" transactions, which are subject to certain reporting rules.[3] (*See id.* ¶ 45 ("Before September 2016, Plaintiffs' Plan, as well as similarly situated S-ESOPs, was never identified as a listed transaction …").) The complaint contends that the "Byers Rule originates from the ongoing Byers Investigation" and was "not imposed before September 2016." (*Id.* ¶¶ 40-41.)

[1] Plaintiffs say that Exhibit 1 of the complaint contains a sample approval letter the IRS sent to an unnamed Byers client (apparently not WCEC). (*Id.* ¶¶ 17, 30). However, Exhibit 1 appears to be a collection of letters from the IRS relating to audits of one or more tax returns. (*See* Dkt. 2-2.) Identifying details have been redacted, making it difficult to determine if the letters concern one plan or many. It is unclear which, if any, of the letters show the IRS approved any particular plan. The United States contacted Plaintiffs' counsel about this and other apparent discrepancies with the exhibits on February 19, 2025, but has not received a response.

[2] Plaintiffs state that Exhibit 2 contains a "true and correct copy" of an internal IRS letter addressed to the "Lead Development Center…Office of Tax Promoter [Investigations]" proposing the investigation. (*Id.* ¶36.) Exhibit 2 appears to be an excerpt from an IRS auditor's activity log, not a letter, although the log does contain internal discussions regarding Mr. Byers. (Dkt. 2-3.) The name of the employer and plan at issue have been redacted making its relevance to plaintiffs unclear.

[3] The Internal Revenue Code and associated regulations require that taxpayers report their participation in certain transactions that might be used to avoid paying taxes. *See* 26 C.F.R. § 1.6011-4 (requiring corporate taxpayers to disclose participation in "reportable transactions," *i.e.*, transactions that are, or could be, used for tax avoidance). A listed transaction is a type of reportable transaction. *See* 26 C.F.R. § 1.6011-4(b)(2). Failure to report participation in such transactions may result in tax penalties. *See* 26 U.S.C. § 6707A.

The complaint does not state what the actual contents of the "Byers Rule" are. Plaintiffs generally assert that the IRS "has exceeded its authority by adding additional reporting requirements" for ESOPs, and that the IRS might impose "monetary penalties[] and criminal sanctions" if taxpayers or their plans "do not comply with such reporting requirements." (*Id.* ¶ 8.) Plaintiffs do not point to any document or statement announcing the supposed rule or describing any of its supposed requirements. Instead, they say that whatever the "Byers Rule" is, it was promulgated "in secret." (*Id.* ¶¶ 42, 66.) However, despite the rule's alleged secrecy, plaintiffs allege it contains several "additional reporting requirements," which they list in detail. (*See id.* ¶ 48 i-viii.)

Although Plaintiffs generally assert that these mandates are "not otherwise required" by statute or regulation (*id.* ¶ 48), Plaintiffs' descriptions suggest that several supposed requirements depend on how existing statutory provisions or regulations are interpreted. For example, they say the "rule" adds a requirement that plan appraisers provide their employer identification number, or EIN, as "allegedly required under [Treas. Reg.] 1.170A-17(a)(3)(iv)[.]" (*Id.* ¶ 48-iii.) This suggests that Plaintiffs dispute the IRS's interpretation of that regulation, not that the IRS created a rule that was untethered from existing law.

How or if the IRS applied the "rule" against WCEC or its ESOP is unclear. Plaintiffs suggest that the IRS has disqualified plans sponsored by *other* Byers clients. (*See, e.g., id.* ¶ 43 (alleging that the IRS has been "auditing former clients of Byers" and "using the Byers Rule to disqualify legitimate retirement plans"). Yet they also say their suit may be characterized as a "pre-enforcement" challenge, implying the IRS has not taken action against the WCEC ESOP specifically. (*Id.* ¶ 9 (alleging that the WCEC plan remains "subject to audit, taxation, and plan

disqualification"); *see also id*. ¶ 51 ("Plaintiffs' Complaint is a pre-enforcement action to prevent Defendant from applying the Byers Rule to Plaintiffs[] and similarly situated plaintiff's [sic].") They also allege that the WCEC ESOP "is a duly qualified retirement plan" (*id*. ¶ 2) which could mean one of two things: it could be a factual assertion that the IRS qualified the plan and never revoked qualification, or a legal contention that the plan should be deemed qualified under the applicable statutory and regulatory law, whether or not the IRS agrees.

However, a different paragraph alleges that the IRS has already "unlawfully disqualified the Plan … in reliance upon the Byers Rule." (*Id*. ¶ 49-i.) The Plaintiffs do not provide details about when or why the IRS supposedly disqualified the WCEC plan. The same allegation appears almost verbatim in the complaint in *Daines*, Case No. 1:24-cv-01057 (E.D. Wis.) (Dkt. 1 at ¶ 52-i). The *Daines* complaint goes on to allege that the IRS sent a letter announcing the disqualification of the plan at issue there and provides other details that plaintiffs here do not offer (*see id*. ¶ 55). This suggests that the allegation that the WCEC ESOP was disqualified was inadvertently copied from the other complaint and does not apply to WCEC.

Yet another paragraph in the complaint here alleges that, faced with the threat of "costly ongoing litigation" and "potential" noncompliance penalties, WCEC chose to "wind down" the ESOP on December 31, 2023. (*Id.* ¶ 29.) What that litigation was and where it was pending is not alleged. The complaint arguably suggests Plaintiffs had the right to bring a proceeding in the United States Tax Court: it asserts that the IRS sent Plaintiffs "Notices of Deficiency" in 2022. (*Id.* ¶ 49-v.). A "deficiency" arises when the IRS believes that a taxpayer's true liability is greater than what the taxpayer reported. It is not a final assessment but triggers a taxpayer's right to bring a pre-assessment suit challenging the deficiency in the United States Tax Court.

*See* 26 U.S.C. § 6211(a); *Fayeghi v. Comm'r*, 211 F.3d 504, 508 (9th Cir. 2000) (discussing deficiencies); *Hallmark Rsch. Collective v. Comm'r*, 159 T.C. 126, 139 (2022) (deficiency notice is the ticket to Tax Court).) However, while the complaint references a Tax Court suit involving a Byers client named Adminicor Services Inc. (*id.* ¶ 38 n.1), it does not identify any specific suit concerning WCEC. Once again, the allegation may have been inadvertently lifted from the *Daines* complaint (without applying to WCEC). The non-corporate Daines plaintiffs also allege that the IRS sent them deficiency notices in 2022, but, unlike Plaintiffs here, make several additional allegations regarding the notices and invoked their right to bring suit in Tax Court. *See Daines et al. v. Internal Revenue Service*, Case No. 1:24-cv-01057 (E.D. Wis.) (Dkt. 1 at ¶¶ 52-iv, 53, 54, 57).

### C. Counts alleged and relief requested

The complaint seeks relief pursuant to three counts. In Count I, Plaintiffs allege the IRS violated the APA by issuing the "Byers Rule" without notice-and-comment procedures. (Compl. ¶¶ 52-67.) In Count II, Plaintiffs allege the IRS conduct in promulgating the Byers Rule was arbitrary and capricious and thus a violation of the APA. (*Id.* ¶¶ 68-85.) Finally, in Count III, Plaintiffs allege that, because the Byers Rule was never submitted to Congress or any other governing body, the Byers Rule violates the Congressional Review of Agency Rule Making Act, as reflected in 5 U.S.C. § 801(a)(1)(A). (*Id.* ¶¶ 86-90.)

To remedy these supposed wrongs, the complaint asks the Court to: (a) determine the "Byers Rule" is an unlawful agency rule; (b) declare that the IRS exceeded its authority by "promulgating" the supposed rule "without notice-and-comment"; (c) find that the application of the "Byers Rule" to Plaintiffs and other Byers clients is "arbitrary and capricious"; and (d) vacate

the "Byers Rule" for "all similarly situated taxpayers" nationwide. They do not seek any relief directly related to their Congressional Review Act claim. (Compl., Prayer for Relief.)

## III. ARGUMENT

### A. Standard for review

The United States moves to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6). Motions under Rule 12(b)(1) challenge subject matter jurisdiction. Here, the United States makes a facial challenge to jurisdiction, arguing that the allegations in the complaint do not support jurisdiction on their face. On a facial challenge to jurisdiction, the standard for review is similar to that for a motion under Rule 12(b)(6). *Miller v. United States Dep't of Agric.*, 2024 U.S. Dist. LEXIS 211993, at *4-5 (W.D. Okla. Nov. 21, 2024).

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While the Court must accept well-pleaded allegations as true, it need not accept allegations contradicted by other allegations in the complaint. *See, e.g., Martineau v. Currutt*, 2022 U.S. Dist. LEXIS 11357, at *14 (D. Utah Jan. 19, 2022) (dismissing claim where "contradictory factual assertions" rendered allegations "inherently implausible"). Legal conclusions and conclusory allegations merely reciting the elements of the claim are also not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681. The Court must determine – after excising the allegations not entitled to the presumption of truth – whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. That

is, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. If the allegations give rise to an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567, then the complaint "stops short of the line between possibility and plausibility of 'entitle[ment] to relief[.]'" *Twombly*, 550 U.S. at 557. This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Plaintiffs have not shown they have standing under either Article III or the APA.

Standing is an aspect of subject matter jurisdiction, and therefore generally falls under the purview of Fed. Civ. P. 12(b)(1). *See, e.g.*, *Colt v. United States DOL*, 2025 U.S. Dist. LEXIS 4657, at *15 (D.N.M. Jan. 9, 2025) (citations omitted) (analyzing standing under the APA). Plaintiffs are responsible for establishing that they have Constitutional standing under Article III and standing under the APA. *See, e.g., Wyo. ex rel. Crank v. United States*, 539 F.3d 1236, 1242-43 (10th Cir. 2008) (evaluating both Article III and APA standing criteria).

#### 1. Plaintiffs have not properly alleged Article III standing.

To show Article III standing, a plaintiff must allege that it has (1) suffered an injury in fact (2) that is fairly traceable to the conduct the plaintiff is challenging and (3) that is likely to be redressed by a favorable judicial decision. *Lee v. McCardle (In re Peeples)*, 880 F.3d 1207, 1212-13 (10th Cir. 2018) (citations and quotations omitted).

Here, Plaintiffs' conclusory and contradictory allegations are not sufficient to establish standing. First, they have not adequately alleged that they suffered an injury in fact. The injury-in-fact requirement ensures that only those with a "direct stake in the outcome, and not those having abstract concerns" may bring suit. *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d

445, 451 (10th Cir. 1996) (internal quotations omitted); *see also S. Utah Wilderness All. v. United States DOI*, 2025 U.S. Dist. LEXIS 20644, at *14 (D. Utah Feb. 4, 2025) (similar).

The complaint asserts that Plaintiffs have sustained "concrete and particularized" damages with little explanation as to what those damages actually are. (*See* Compl. ¶¶ 66, 83.) However, their core contention appears to be that the IRS is disqualifying "similarly situated" plans under the "Byers Rule," and that plan sponsors are forced to bear the consequences of such disqualification, including increased compliance costs, increased taxes and/or penalties, and a decreased ability to offer employee benefits. (*See*, *e.g*., *id*. ¶ 43 (suggesting the IRS has used the "rule" to "disqualify legitimate retirement plans").)

Assuming that allegation is true, as is appropriate for a motion to dismiss, those other plans likely could allege an injury in fact sufficient for standing. But the fact ***other*** plans were disqualified would not by itself mean WCEC or its plan suffered or are imminently likely to suffer any injury—especially if, as Plaintiffs allege, WCEC chose to "wind down" the WCEC plan more than a year ago.[4] (Compl. ¶ 29.) True, Plaintiffs say in passing that the IRS "unlawfully disqualified the [WCEC] Plan … in reliance upon the Byers Rule[.]" (*Id*. ¶ 49.) But they do not provide a single supporting detail (such as the date of the supposed disqualification), and at the same time (and in contradiction) assert that their suit can be characterized as a *pre*-enforcement challenge, and that the WCEC ESOP "remains subject to … plan disqualification[.]" (*Id*. ¶¶ 9, 51.) It is difficult to see how a plan can be already disqualified, while at the same time remaining "duly qualified" (*id*. ¶ 2) and still subject to disqualification

[4] To be clear, to the extent Plaintiffs allege that the WCEC ESOP is no longer in existence, they have not alleged any "certainly impending" injury sufficient to establish standing.

(while also being defunct).[5] The Court need not accept allegations contradicted by other allegations in the complaint. *Martineau*, 2022 U.S. Dist. LEXIS 11357, at *14 (dismissing claim based on "contradictory factual assertions"). Plaintiffs' failure to articulate any past or imminent particularized harm to themselves, as opposed to other employers and their plans, means they have not shown an injury in fact.

Plaintiffs have not shown they meet other requirements for Article III standing, either. Even assuming the IRS disqualified the WCEC plan based on the putative Byers Rule, Plaintiffs would still need to show their injury could be redressed by this Court's favorable decision. The injury Plaintiffs assert (at least for other plans) is disqualification, and the tax consequences that flow from disqualification. They ask the Court to solve that problem by vacating the "rule." But for such a ruling to provide redress, the WCEC ESOP would have to be a going concern—something plaintiffs have already contradicted by alleging the plan was closed down. (Compl. ¶ 29.) Moreover, the relief that Plaintiffs actually request – declaratory judgments that the "Byers Rule" is unlawful, was promulgated in excess of the IRS's authority, is arbitrarily and capricious as applied to plaintiffs and other Byers clients, and should be vacated for "all similarly situated taxpayers" – could not redress the harm they may have suffered from WCEC's decision to "wind down" the plan more than a year ago.

Indeed, for the requested action to redress any injury to Plaintiffs, the WCEC ESOP (or any new plan WCEC wishes to establish) still would need to meet the other requirements for

---

[5] As noted above, a likely explanation for the stray claim that the WCEC ESOP was disqualified is that Plaintiffs inadvertently copied that language from the *Daines* complaint, which alleges the plan in that case was disqualified and provides additional details about the disqualification. *Daines*, Case No. 1:24-cv-01057 (E.D. Wis.) (Dkt. 1 at ¶¶ 52-i, 55).

qualification (which are not pleaded in the complaint). If the WCEC ESOP was not otherwise qualified under the applicable statutory and regulatory provisions, the fact it also did not meet the "Byers Rule's" supposed requirements would not matter. Plaintiffs assert that the WCEC ESOP is "duly qualified" (despite also suggesting it has shut down) but do not plead sufficient facts to show it would have been qualified but for the Byers Rule. They do not allege that they sought a qualification determination. Instead, they allege only the bare legal conclusion that the ESOP "qualifies under IRC §§ 401(a) and 501(a), as well as 5 U.S.C. § 4975 [sic]." (Compl. ¶ 27.) The last citation appears to be in error—Plaintiffs likely intended to refer to **26** U.S.C. § 4975, a provision that imposes a tax on certain transactions between a benefit plan and related parties.[6] But in any event, Plaintiffs do not allege facts clearly showing that the WCEC ESOP was qualified, that it was ever disqualified, that it remains operational, and that it would have remained qualified but for the supposed Byers Rule. As a result, they have not shown that the Court could grant relief to redress their alleged injury such that the ESOP would be resurrected after WCEC ended it.

**2. Plaintiffs have not shown they have standing under the APA.**

*a. To show standing under the APA, Plaintiffs must allege a "final agency action."*

In the Tenth Circuit, APA standing is a jurisdictional requirement that must be addressed before a court can reach the merits of a claim. *See, e.g.*, *Sinclair Wyoming Ref. Co., LLC v. United States Env't Prot. Agency*, 72 F.4th 1137, 1139 (10th Cir. 2023) (dismissing suit for lack of jurisdiction as a result of failure to show standing under the APA); *Alpine Sec. Corp. v. SEC*, 2024 U.S. Dist. LEXIS 201636, at *14-16 (D. Utah Nov. 5, 2024) (summarizing case law).

[6] Plaintiffs may have intended to suggest that they were not engaging in such transactions.

To demonstrate standing under the APA at the pleading stage, a plaintiff must, among other requirements, show that it is seeking judicial review of a "final agency action." 5 U.S.C. § 704; *Alpine Sec. Corp.*, 2024 U.S. Dist. LEXIS 201636, at *15 (citing *Kansas v. United States*, 249 F.3d 1213, 1222 (10th Cir. 2001). Second, the plaintiff must show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" because of that action, within the meaning of the relevant statute. *Kansas*, 249 F.3d at 1222*; see also Alpine Sec. Corp.* 2024 U.S. Dist. LEXIS 201636, at *15-16 (similar).

To determine whether an agency action is "final," courts in the Tenth Circuit look to two factors. First, the agency action must "mark the consummation of the agency's decision-making process." *Sinclair Wyo. Ref. Co., LLC* , 72 F.4th at 1143 (citations and quotations omitted). Second, "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Id.* (citations and quotations omitted). Agency action is not consummate if it is "tentative" or "interlocutory." *Id*. The plaintiff bears "the burden of identifying specific conduct and explaining how it is 'final agency action.'" *Colo. Farm Bureau Fed'n v. United States Forest Serv*., 220 F.3d 1171, 1173 (10th Cir. 2000).

b. *Plaintiffs have failed to allege that the "Byers Rule" is final agency action from which they have suffered harm—meaning they cannot survive a challenge under Fed. R. Civ. P. 12(b)(1) or (6).*

The issuance or application of an administrative rule may be a final agency action. But Plaintiffs have not plausibly alleged the existence of the so-called Byers Rule at all, let alone that it was a final agency action operating against them. Whether their claims are analyzed as failure to allege standing or failure to state a claim on which relief can be granted, the result is the same.

The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). By contrast, when an agency makes an "individualized determination" of a fact-specific issue on a case-by-case basis, and applies existing legal authority without intending to impact law or policy going forward, that determination is not an APA "rule." *Neustar, Inc. v. FCC*, 857 F.3d 886, 894-895 (D.C. Cir. 2017); *see also Rost v. United States*, 44 F. 4th 294, 303-04 (5th Cir. 2022).

Plaintiffs do not plead any "statement" by the IRS that contains or otherwise elucidates the supposed rule. While they offer a long list of requirements the rule supposedly imposes (Compl. ¶ 48) – a difficult feat if the rule is "secret" – they do not tie these requirements to any IRS statement or to any other source aside from their own speculation. Nor do they say whether their particular plan failed some, all, or none, of the supposed new requirements—which is not surprising, given that they have not clearly alleged the WCEC plan itself was ever disqualified.

The complaint does allege that the "Byers rule issued a legal and administrative memorandum." (*Id.* ¶ 76.) This wording is likely an error—Plaintiffs probably do not mean that a rule itself issued a memorandum. The only specific allegations they make about the memorandum are that it "included the appointment of Joseph Conroy to oversee the Tax Promoter Investigation" (which appears to mean the investigation of Mr. Byers), that it was "maintained in secret," and that it authorized Mr. Conroy to "change well-established rules outside the public purview." (*Id.* ¶¶ 76-77, 42.) Decisions to assign an individual to an investigation or to keep a legal memorandum confidential are not actions that determine a

plaintiff's "rights or obligations." Nor are they actions from which "legal consequences" impacting plaintiffs "will flow" except in the most broad and indirect sense. These allegations do not show the type of "final agency action" required for APA standing in this circuit.

Nor does the allegation that a memo "authorized" Mr. Conroy to "change" established rules rise above the speculative level. The plaintiffs' theory boils down to an assertion that the IRS possesses a hidden document that Plaintiffs have not seen, and can provide very few identifying details about (such as author, title, or date), but that they are nevertheless sure relates to Byers client ESOPs, and announced a (secret) new rule (that required notice-and-comment and review by Congress). This claim is inherently implausible: there would be little purpose in the IRS creating an administrative rule it intended to keep secret, because it could never invoke the "rule" in any proceeding in which the taxpayer challenged the IRS's plan determinations. That strongly suggests that whatever document Plaintiffs are referring to is simply privileged legal advice (if it exists at all), and was not intended to be a binding administrative rule.

The Plaintiffs attempt to bolster their allegations of the existence of the "Byers Rule" by contending that the IRS "confirmed" the "existence" of the supposed rule in its response to a FOIA request sent by a "similarly situated" but unnamed taxpayer. (Compl. ¶ 42.) Plaintiffs say they have attached that FOIA response to the complaint, as Exhibit 3. (*Id.*; *see als*o Dkt. 2-4 (Exhibit 3).) But the document, which appears to be missing one or more pages,[7] does little to clarify or support Plaintiffs' assertion. It certainly does not establish that any such rule exists. The pages provided contain a partial, and heavily redacted, list of records that WCEC, not a

[7] The United States alerted Plaintiffs' counsel about the seemingly missing pages via email on February 19, 2025. Plaintiffs have not responded.

similarly situated taxpayer, requested under FOIA. (For example, WCEC appears to have sought records relating to any "State and Local Law Enforcement" request for information related to Byers or the WCEC ESOP. (Dkt. 2-4 at 2, ¶ 2).) The IRS correspondence describes pages the IRS is providing in response to the FOIA request, and explains that some responsive materials were withheld because they contained information related to other taxpayers (triggering confidentiality requirements under 26 U.S.C. § 6103) or for other reasons. But the document does not appear to reference any rule or confirm the existence of a rule, let alone set forth the rule's supposed terms. The Court need not accept Plaintiffs' conclusory assertion that the IRS has "confirmed" the existence of the supposed rule when they offer no supporting detail beyond an exhibit whose contents contradict or say nothing about their claim.

Plaintiffs' other allegations do not plausibly allege the existence of the "Byers Rule" either. They allege a number of facts regarding Mr. Byers and plans associated with him. (*See generally* Compl. ¶¶ 12-18.) They also allege facts concerning the IRS's dealings with Mr. Byers and/or his clients' plans. For example, Plaintiffs say that the IRS commenced an investigation of Mr. Byers in 2016, that Mr. Conroy led the relevant IRS office, that one of Plaintiffs' attorneys met with Mr. Conroy in 2019 to discuss the audit of an unnamed but "similarly situated" Byers clients, and that after 2016 the IRS audited and disqualified one or more plans associated with Byers. (*Id.* ¶¶ 35-44.) But none of these facts, even assuming they are true, constitute an IRS "statement" promulgating a rule, or constitute a "final action" that imposed final consequences on Plaintiffs themselves.

Read generously, the allegations suggest the IRS made individualized determinations of a fact-specific issue – whether various benefit plans, if not necessarily WCEC's plan, are qualified

plans under § 401(a) of the Internal Revenue Code – on a case-by-case basis. That is not a "rule" for purposes of the APA or Congressional Review Act, let alone a final agency action applied against Plaintiffs here.

**C. This Court has no jurisdiction for Plaintiffs' APA suit, because Congress has provided a specific mechanism for relief elsewhere.**

Lack of standing is not Plaintiffs' only problem. To state a claim upon which relief can be granted, they must allege a waiver of sovereign immunity and a proper cause of action. It is true that the APA offers a vehicle for relief from certain agency actions. However, it allows judicial review only for "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. As the statutory text states, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Where Congress has provided another mechanism for relief, review under the APA is inappropriate. *See, e.g.*, *Eames v. United States*, 2014 U.S. Dist. LEXIS 136632, at *12-13 (D. Utah Sep. 26, 2014) (finding that court "lack[ed] subject-matter jurisdiction under the APA" where another statute, there FOIA, "provides a review process for the[] claims").

Here, Plaintiffs' primary grievance is that the IRS may disqualify (or has disqualified) their ESOP under the supposed Byers Rule. But Congress has provided another mechanism to challenge ESOP disqualification in 26 U.S.C. § 7476(a), "Declaratory judgments relating to qualification of certain retirement plans." *See Ed Thielking, Inc. v. Comm'r*, 2020 Tax Ct. Memo LEXIS 5, at *6 (T.C. Jan. 9, 2020) ("Section 7476(a) authorizes this Court to render a declaratory judgment relating to the qualification of a retirement plan, subject to the limitations in section 7476(b)."). Tax Court decisions on § 7676(a) actions may be appealed to the Court of

Appeals for the appropriate circuit. *See, e.g.*, *Tamko Asphalt Prods. v. Comm'r*, 658 F.2d 735, 738 (10th Cir. 1981) (addressing claim that Tax Court made improper evidentiary rulings in § 7476 action); *DNA Pro Ventures, Inc. v. Commissioner*, 856 F.3d 557, 558-59 (8th Cir. 2017) (upholding Tax Court's decision disqualifying ESOP under § 7476).

Section 7476 does have limitations. One is that only certain parties, such as the employer or the plan administrator, may bring a petition. *See* 26 U.S.C. § 7476(b)(1). This may mean the WCEC ESOP itself could not bring suit (even if had not closed down), but that would not prevent WCEC from obtaining adequate relief for the plan. Another limitation is that litigants must exhaust administrative remedies before filing suit. *See* 26 U.S.C. § 7476(b)(3); *Tamko*, 658 F.2d at 738 ("To allow the party seeking plan approval to freely bring new evidence before the Tax Court would amount to a bypass of the Service's administrative remedies since the Tax Court would be considering factual contentions the IRS had no opportunity to consider.") Because Plaintiffs have not alleged that they have exhausted their administrative remedies (or met the statute's other requirements, and assuming the plan was actually disqualified), a Tax Court action may be premature. But that does not mean Plaintiffs can leapfrog over the remedy Congress provided for improper disqualification by bringing an APA suit.

Plaintiffs may argue that a suit under § 7476 is useless if they have no wish to resurrect their plan, but instead wish to challenge penalties imposed in connection with its (possible) disqualification. (*See, e.g.*, Compl. ¶ 8 (alleging that the IRS is imposing "monetary penalties" in connection with the "Byers Rule").) But even assuming the plan or the corporation are liable for taxes or penalties, an APA suit would not be available to them. That is because Congress has provided at least two mechanisms for taxpayers to challenge their tax obligations, including any

penalties imposed: a petition in the United States Tax Court (which generally allows taxpayers to challenge the IRS's deficiency calculations before the IRS makes a final assessment and before the taxpayer pays the tax), or a refund suit in the District Court under 26 U.S.C. § 7422 (which requires that taxpayers first pay the tax and exhaust their administrative remedies). Because Congress has provided alternative remedies, Plaintiffs could not challenge the payment of taxes and penalties via the APA.

**D. Even if Plaintiffs could bring suit under the APA, the putative rule here is not subject to notice and comment procedures.**

Even if Plaintiffs could establish that the IRS had promulgated a secret, unwritten "rule" within the meaning of the APA, it would not mean the rule was deficient because it did not go through notice and comment. "Not all 'rules' must be issued through the notice-and-comment process." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Notice and comment procedures do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Id.* (citing 5 U.S.C. § 553(b)(A); *see also United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1138-39 (10th Cir. 2010) ("Of course, [APA] § 553 specifically exempts interpretive rules from its notice and comment requirements[.]"). The "Byers Rule," as pleaded, simply reflects Plaintiffs' impression of IRS policy or procedure with respect to ESOPs it selected for examination in connection with its broader investigation into potential tax shelter promoter activity. The "Byers Rule" – if it were a rule at all – would thus be interpretive, and not subject to notice and comment requirements.

Nor are Plaintiffs' allegations sufficient to establish a "*de facto*" rule or binding norm that would otherwise require formal notice and comment rule making. *See Ctr. for Auto Safety v. Natl. Hwy. Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006) ("In order to sustain their

position, appellants must show that the 1998 policy guidelines either (1) reflect 'final agency action,' … or (2) constitute a de facto rule or binding norm that could not properly be promulgated absent the notice-and-comment rulemaking required by § 553 of the APA."). The supposedly secret rule plaintiffs allege here is "nothing more than [a] general policy statement[] with no legal force." *Id.* at 808. Any such "rule" does not "determine any rights or obligations," nor does it "have any legal consequences" and, thus, it cannot "otherwise be seen to constitute a binding legal norm." *Id.*

It is implausible that the IRS would intend a "secret" rule to determine binding rights and obligations, because, as explained above, it would be impossible for the IRS to defend any proper challenge to IRS actions based on the rule. Instead, rights and obligations are determined by the relevant statutes and regulations. Plaintiffs may not agree with the IRS's interpretation. And they are free to challenge the IRS's interpretation of the law in a Tax Court petition or § 7422 refund suit, if the IRS takes action against them. But the "Byers Rule" is nothing more than Plaintiffs' impression of the IRS's view of the legality of various companies' ESOPs. So plaintiffs certainly do not plead sufficient facts to establish that the so-called "Byers Rule" is subject to notice and comment requirements.

### E. Plaintiffs have not shown a private right of action under the Congressional Review Act.

While the APA affords a vehicle for challenging agency rulemaking in appropriate circumstances, the Congressional Review Act does not provide an individual cause of action. To the contrary, 5 U.S.C. § 805 states that "[n]o determination, finding, action or omission under this chapter shall be subject to judicial review." "By its plain language, § 805 prohibits judicial review of" the failure to submit a rule to Congress under the Congressional Review of Agency

Rule Making Act. *Kansas Nat. Resource Coalition v. U.S. Dept. of the Int*., 382 F. Supp. 3d 1179, 1182-83 (D. Kan. 2019), *aff'd*, 971 F.3d 1222 (10th Cir. 2020). For that reason, Plaintiffs' Congressional Review Act claim, Count 3, should be dismissed under Rule 12(b)(1), as the Court is without jurisdiction to consider it.

### F. The Anti-Injunction Act and the Declaratory Judgment Act Expressly Prohibit This Action.

Finally, to the extent Plaintiffs challenge the IRS's attempts to assess and collect taxes and penalties in connection with the WCEC ESOP or any other Byers client plan, the Anti-Injunction Act (AIA) and Declaratory Judgment Act (DJA) bar their claims. The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421. Likewise, the tax exception to the DJA provides that a Court "may declare the rights and other legal relations of any interested party seeking" a declaration "except with respect to Federal taxes." 28 U.S.C. § 2201. The DJA's tax exception is "at least as broad" as the AIA's prohibition. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732-33 n.7 (1974).

Together, these provisions protect "the Government's ability to collect a consistent stream of revenue" by requiring taxpayers to fully pay their liabilities before challenging them in District Court. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012); *see also Bob Jones*, 416 U.S. at 736-37 (AIA focuses on "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund") (internal quotes omitted). This does not mean taxpayers cannot challenge tax debts.

But it does mean that taxpayers who have not filed a pre-assessment challenge in the Tax Court must generally pay the tax first and sue for a refund under 26 U.S.C. § 7422.

Plaintiffs assert that they "are neither attempting to restrain Defendant's ability to tax nor Defendants' collection efforts." (Compl. ¶ 10.) They may say they seek only to vacate the supposed Byers Rule. Given the ambiguities and inconsistencies surrounding the supposed rule, it is admittedly difficult to tell what, exactly, would happen if it were vacated. But to the extent vacating it would prevent the IRS from auditing Byers clients or their plans, disqualifying plans that fail to meet legal or statutory requirements, or assessing or collecting taxes or penalties from them, such relief is barred by the two Acts.

To determine whether Plaintiffs' suit is "for the purpose of restraining the assessment or collection" of tax, and thus barred under the AIA, the Court should "inquire not into [the] taxpayer's subjective motive, but into the action's objective aim – essentially, the relief the suit requests." *CIC Servs., LLC v. IRS*, 593 U.S. 209, 217 (2021). As the Supreme Court puts it, the AIA "kicks in when the target of a requested injunction is a tax obligation – or stated in the [AIA's] language, when that injunction runs against the 'collection or assessment of [a] tax.'" *Id.* at 218.

To the extent the relief Plaintiffs seek would prevent the IRS from auditing, assessing, or collecting taxes or penalties from Byers clients, it would necessarily restrain the assessment or collection of taxes. Indeed, the action that plaintiffs attack – the disqualification of unidentified Byers plans, if not the WCEC plan – appears to be the result of the IRS's investigations and audits of various plans. Plaintiffs are vague as to the sort of penalties they allege such plans may be subject to, but their penalty challenge (to the extent they have one) appears to run against the

penalties Byers plans may be (or have been) assessed in connection with their disqualification. The plaintiffs have not alleged any reason why such claims would not be barred under the AIA. *See CIC Servs.*, 593 U.S. 218 ("[A] suit seeking injunctive relief against a tax falls squarely within the literal scope of the [AIA].") (*quoting Bob Jones*, 416 U.S. at 732) (internal quote and alterations omitted).

To be sure, in *CIC Servs.*, after stating the law, the Supreme Court found that the plaintiff was not seeking to restrain the assessment or collection of taxes, and thus the AIA's prohibition did not apply. But that does not help Plaintiffs here. While *CIC* and this case ostensibly challenge reporting requirements, the cases are very different. The *CIC* plaintiff, a "material advisor" to taxpayers, sued to enjoin the reporting requirements for material advisors with respect to micro-captive insurance transactions, which IRS Notice 2016-66 identified as reportable transactions. Though the reporting requirement was backed by a tax penalty, meaning material advisors who did not meet the requirement were subject to the penalty, the plaintiff targeted the reporting requirement, not the tax penalty. In fact, the material advisor did not face the penalty: it brought suit before it was required to report anything, and thus focused on the reporting requirements themselves.

This suit is different. Plaintiffs' core complaint is not just that the supposed Byers Rule imposes reporting requirements, but that failure to adhere to the requirements triggers plan disqualification and resulting tax obligations. (*See, e.g.*, Compl. ¶ 43 (alleging that the IRS is "using the Byers Rule to disqualify legitimate retirement plans and issue unsupported tax deficiencies", *i.e.*, estimates of tax due if a plan is found not to qualify for tax-advantaged status). In Plaintiffs' view, the IRS is depriving some number of Byers clients (if not Plaintiffs) of the tax

advantages a properly qualified ESOP provides. Plaintiffs, or whichever Byers clients have been affected, are free to challenge their disqualification or associated taxes through proper channels (generally, a suit in Tax Court challenging a notice of deficiency or a tax refund claim under 26 U.S.C. § 7422). But they cannot constrain the usual tax assessment and collection process with a pre-enforcement suit.

Indeed, because Plaintiffs have adequate legal remedies available for challenging plan disqualification or taxes elsewhere, the limited judicial exceptions to the AIA do not apply here. Under the *Williams Packing* exception, a court may grant a pre-enforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail and if equity jurisdiction otherwise exists. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). Under the *Regan* exception, the plaintiff may proceed where there is no other means of litigating its claims. *South Carolina v. Regan*, 465 U.S. 367 (1984). Here, though, a Byers client who was assessed for a tax or penalty could challenge it in Tax Court or U.S. District Court. Indeed, the *Daines* plaintiffs are doing just that. Neither of the AIA exceptions applies, given the legal remedies available to plaintiffs. Accordingly, the DJA and AIA bar this action.

## IV. CONCLUSION

For the reasons above, Plaintiffs' suit should be dismissed with prejudice.

//

Dated: February 25, 2025

*/s/E. Carmen Ramirez*
E. CARMEN RAMIREZ
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-616-2885
E.Carmen.Ramirez@usdoj.gov
western.taxcivil@usdoj.gov

*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to any and all parties who are CM/ECF participants.

*/s/ E. Carmen Ramirez*
Trial Attorney, Tax Division
U.S. Department of Justice